We're going to move now to appeal 25-1890, William Clements v. Gunnar Optiks, LLC. We'll begin with oral argument, Mr. Rengdahl from Loop. Morning, and may it please the court. District Court's decision below rests on three fundamental errors. Before we get into that, I have another question about jurisdiction. This time about subject-matter jurisdiction. Why is there subject-matter jurisdiction here? So this is an appeal from District Court's decision? That's appellate jurisdiction. Why is there subject-matter jurisdiction in the District Court? This case is under the Class Action Fairness Act, which requires, at a minimum, minimal diversity. So we need to know the citizenship of all parties. Do we know that? Yes, hold on one moment. I mean, I believe, so the citizenship of the plaintiff is here in Chicago. That's what your brief says. What's the citizenship of Gunnar Optiks? I believe Gunnar is based in California. I'll defer. What does that have to do with its citizenship? Your brief, and for that matter, Gunnar Optiks' brief, treat a limited liability company as if it were a corporation. Your brief says that it's a California LLC with its principal place of business in California, but it's not a corporation. That's the rule for corporations. For an LLC, we need to know the membership and the citizenship of every member. And if any member is a partner, we need to know the citizenship of every member or partner. And I don't see that in the brief. Well, at this point, I think we could provide supplemental briefing on this. I don't think this should be an obstacle here. Why? Do you know who all the members are and what their citizenship is? I do not. I'll have to defer to my friend on the other side. Well, your friend on the other side also treats an LLC as if it were a corporation. And I ask this not only because we have a question about subject matter jurisdiction. We have a question of abstention under 28 U.S.C. 1332 D-4. D-4 says that if the Privacy Act claim necessarily is, if the defendant is a citizen of Illinois, of the filing state, then the district court must abstain. It's compulsory. Until we know the citizenship of every member of Gunner Optics, we don't know how to apply that exclusion. Yeah, it's an issue. We've got serious problems here. You know, the court would likely be happy to provide supplemental briefing on all these issues with that result. I suspect that will be necessary. You may continue, Your Honor. Thank you, Your Honor. So first, the court read an overly broad, expansive health care exclusion into BIFA that's contrary to the plain language of the statute. It's contrary to the meaning of the term health care treatment under BIFA itself. And it's contrary to guidance on a very closely related issue. And second, even assuming that the conduct here qualify as health care treatment, district court failed to properly evaluate whether the biometric data that was actually collected by Gunner's ETO was used for the particular purpose of providing health care treatment, runs afoul of the language of BIFA and the Illinois Supreme Court's admonition in those. Do you know whether Clements used the virtual try-on features in connection with buying prescription glasses versus non-prescription glasses? As the case comes to the court, that's not alleged in the complaint, whether it was prescription versus non-prescription. I'm not aware of whether he was searching for prescription versus non-prescription. We think either way, we fall outside of that BIFA exclusion. Well, the class definition is broad enough to encompass both. Is that right? It is. So I take it then that the intended scope of the lawsuit is to cover both prescription and non-prescription sunglasses or glasses? That is our intention, yes. If we think the answer as to the central question here on the merits differs as between prescription and non-prescription glasses, what are the next steps? Because I'm not sure the district court thought of it that way. Well, again, on the merits of your question, I mean, I think that it's not an issue that's presented here on the facts. It's not an issue the district court ruled on. It's not an issue that the other side presented in its flow or here. Again, the allegations in the complaint distinguish between prescription versus non-prescription. But to get to the core of your question, the statutory construction question and this point that I just raised about particular purpose, we think even for prescription and non-prescription alike, make this case not one where the HIPAA exclusion will apply. We've got a lot of law going in different directions. It also seems to be bifurcated as between Illinois law and the District of Illinois law, state versus federal. State law, Mosby especially, speaks to the interpretation of statute. And we also have to noodle through the relationship to the regulations. Are you asking us to... It's your position that a number of these NDIL cases should... Is that true? A number of the NDIL cases, correct. Well, I'm not sure that your opinion has to reverse them here. We think they were incorrect. Their task in those cases was applying Illinois law and predicting what Illinois courts, Illinois Supreme Court, would do in interpreting Illinois law. And Moreno, I think, clearly shows that there's at least strong evidence that they were incorrect in that forecast of what Illinois did. If I can return to my third point of where the court admitted error. In arriving at those first two errors I identified, the court drew improper inferences against Clements and reached factual conclusions that were unsupported by and, in fact, contrary to the allegations in the plan. In all three of these errors, not personally. I'm interested in what weight you give to the regulations that the District Court and the briefs cited after Loper Bright. What weights? Could you help me understand the question? Yes, these regulations were written, and I think this case began at a time when Chevron was in court. Chevron has been overruled and replaced by Loper Bright. The District Court's decision and party to brief seem to rely very heavily on interpreting, sussing out the meaning of these regulations. And I'm asking whether these regulations have any weight after Loper Bright. So we've never argued that they have no weight, but certainly they have perhaps diminished value in setting boundaries of what is unfair here compared to Loper Bright. Would you like to reserve the remainder of your time for rebuttal? Yes, I would like to. Very good. Thank you, Mr. Reindahl. We're going to move now to argument on behalf of the appellee, Mr. Miller. And let us start with subject matter jurisdiction. Your supplemental jurisdictional statement asserts that the plaintiff's jurisdictional statement is completely correct. It isn't remotely correct because it treats an LLC as if it were a corporation for purposes of 1332. So what do we know on the record about the members of Gunner Optics and their citizenship and the members' citizenship? Thanks for the question, Robert. To the best of my knowledge, all the members are from the state of California. What do we know about who they are? You know, if you say they're from the state of California because you're assuming that they're LLCs and that they're corporations, we need to know their identities. The rules of this court are quite clear. You must identify every member and every member's citizenship, of which there can be many. It's not enough just to say, well, I think they... Well, I don't know exactly. My question remains, on this record, do we know their members? Do we know who the members are and what the citizenship of the members is? No, Your Honor. All right. Then we need to get it on the record. Understood, Your Honor. But just for some context, the individuals that are the members, now certainly they could have located and established citizenship in Wyoming, for instance, but at the time they were all mainly individuals that left. The time that matters is the date this suit was filed. Understood, Your Honor. Essentially, the district court's decision in this matter was well-reasoned with direction from the Illinois Supreme Court along with the judicial admissions of the plaintiff itself, specifically paragraph four, which defines the purpose. And with regards to theory of the Seventh Circuit in Jackson, Marion County, Seventh Circuit has emphasized that the factual allegations in the complaint are binding judicial admissions, and the plaintiff can plead themselves on court by alleging the facts that gave the complaint. Paragraph four of the complaint clearly states that the purpose of the VTO trial and software is based on to protect the eyes from blue-red. So that being said, the court essentially reasoned that with Moe... The problem, of course, is that your client's own website describes the function of this software as evaluating how the gladiators walk rather than how they perform. But given the rule that we have to accept everything that could be shown on the plaintiff's complaint, don't we have to take it that the function is exactly what Gunner Optics itself said to see how they look? And then we have to turn to the regulations, if they have any weight at all, to see whether those regulations make federal coverage depend on... Well, I suppose the right word is optics, but I'm not going to make them on. But you are correct about the website. However, the website does have a provision in there that the blue-grey glasses protect the eyes from blue... I'm sorry, blue light protects the eyes. So that in itself is defined by... If we look at the second prong of BIPA, which is the HIPAA exemption, unlike Merino, okay? Merino is a different... The terms were defined differently because in the statute itself, you would just use ordinary term. However, under the second prong of HIPAA, essentially there's guidance from the Illinois Supreme Court and Mowgli as it relates to defining exactly what constitutes the health care provision. Building that on, Mr. Miller, at least I may look at the case law differently than you. Strikes me you've got Illinois Court of Appeals and Illinois case, which are going one direction, and those NDIL cases, almost like a pack, going in a different direction. Obviously, if the jurisdictional hurdles here end up being cleared and we're applying Illinois law, we're doing the Erie prediction, which would mean a case like Mosby's got a lot to do with our ultimate resolution. You see the case law differently? No, no. I believe the difference between the two different prongs, and Mowgli using that as Merino. Mowgli, the court encourages under the second prong that they need to look under HIPAA for the definition of what constitutes health care services. In Merino, which is the appellate case, that essentially there was no definition for patient and establishes that clearly in Merino that the plaintiff wasn't a patient. Those terms were taken from Webster's Black Dictionary or whatever, and those terms were common sense, or those terms were used. Using those terms to come to the decision as it relates to the Merino appellate court decision, they obviously found that there was no patient. However, I would point out that in Merino, they do come to a understanding as it relates to health care itself, which is basically defined by the efforts made to maintain, restore, promote someone's physical, mental, or emotional well-being. With regards to the actual blue light classes, they are, and these are the cases from the federal district court here, essentially maintaining vision by making sure the classes fit appropriately to ensure that the vision doesn't deteriorate. So, Mr. Miller, does Gunnar consider itself to be a health care provider subject to HIPAA, and does it comply accordingly? They do also prescription sunglasses, so with regards to that, they would be subject to HIPAA. So, you agree that selling prescription glasses is the provision of health care under that second prong of the HIPAA health care? I would say, I would agree with you, Your Honor. I would also agree that non-prescription glasses like the blue light glasses fall under that as well. Do we know from this record? Is this premature for this to have been resolved in the manner it was? I'm sorry. Prescription versus non-prescription. The allegations and the complaints. Is this premature for us to be reviewing this type of a, was the district court premature in entering the order that it did given the record we have? Because we have nothing in there as a prescription versus non-prescription. Correct. I mean, I think that it's self-explanatory that prescription glasses would fall under HIPAA. And self-explanatory? I find absolutely not. That's an self-explanatory. Indeed, lacks important definitional process, which is why I think everyone has gone out to regulations, which have problems of their own. But I have the same question for you as I did for your colleague, which is, what force, if any, do those regulations have after Volcker Proven? I believe those regulations are guidelines to be used, especially for definitional purposes as it relates to. You would have said the same thing before Volcker Proven. Do you think Volcker Proven is just irrelevant? No, I don't think it is. So what effect does it have on Friedland? I believe it tends to dilute those regulations. You can understand my concern that neither side's brief mentions Volcker Proven, and I'm not sure that either side understands what's happened at the Supreme Court about the effect of federal regulations. Are these regulations expressly authorized by statute or not? Well, they are agreed in HIPAA that that is essentially a statute. No, some statutes say the agency has the authority to fill in the blanks by regulations. That kind of statute is outside the scope of Volcker Proven. Is there a clause like that in HIPAA? I don't know. That's a critical question. Any other questions? No, thank you, Mr. Beller. Thank you very much. Mr. Engdahl, we'll go back to you now for a rebuttal argument. Thank you. Now, Gunnar pointed to Paragraph 4, and this is the principal argument of their response brief as well. But if you actually look at the text of Paragraph 4 there, which I urge you to do, what they're really pointing to there is just the phrase, quote, protect the eye against digital spray, which is describing the nature of the product that they sell, not the VTO that's actually at issue in this case. So they're still faced with the fundamental problem here that there are no allegations connecting the VTO tool, which we allege is purely for showing how the glasses look on customers' face with the products that they sell. So that argument really has limited effect here. Now, getting to the statutory construction, the Supreme Court held just last year in Delgado, as we say in our briefs, that the statutory definitions like those at issue here must be read in the light of conventional meaning of the terms they define. And we think that principle and the ordinary meaning of those terms under the HIPAA definition both point in the same direction. Retail website's virtual tool for trying on sunglasses is simply not healthcare treatment. Unless the court has any further questions. Well, thank you, Mr. Eimdall. Thank you, Mr. Miller. The case will be taken under advisement.